BANK OF JASPER *v.* FIRST NATIONAL BANK OF ROME, GEORGIA.

FIRST NATIONAL BANK OF JASPER, FLORIDA, *v.* STATE BANK OF ROME, GEORGIA.

FIRST NATIONAL BANK OF JASPER, FLORIDA, *v.* FIRST NATIONAL BANK OF ROME, GEORGIA.

BANK OF JASPER *v.* STATE BANK OF ROME, GEORGIA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

Nos. 76, 73, 74, 77. Argued January 12, 1922.—Decided February 27, 1922.

1. Under the law of Florida, an appeal to the State Supreme Court, taken solely to review an interlocutory order overruling a motion

to quash a pretended service by publication for want of jurisdiction, does not operate as a general appearance. P. 117.

2. By an arrangement between a corporation, its agent and a bank, purchasers of the corporation's shares were allowed to discount their notes at the bank, the resulting credits were transferred by the bank to the account of the agent in payment for the shares, and negotiable certificates of deposit were issued by the bank to the agent. *Held* that the certificates of deposit did not represent funds in the bank which as *res* could sustain service by publication upon a nonresident purchaser of the certificates in suits brought by the shareholders in the state court against such purchaser, the bank, the vendor corporation and its agent to have the proceeds of the notes impressed with a trust in plaintiffs' favor and annul their purchases and notes and the certificates on the ground of fraud in selling the shares; and that judgments based on such service, were void. P. 118.

264 Fed. 83, affirmed.

These were actions in the District Court for the Southern District of Florida, brought by the present respondents, respectively, as indorsees of certificates of deposit issued by the respective petitioners. The petitioners pleaded *res judicata*, based on judgments rendered by the Florida courts in suits to which it had been sought to make the respondents parties through service by publication. The District Court held the service valid and the judgments conclusive; but the Circuit Court of Appeals held otherwise, and its judgments, reversing those of the District Court, are here by certiorari.

*Mr. F. P. Fleming,* with whom *Mr. C. Seaton Fleming* was on the briefs, for petitioner in Nos. 76 and 77.

*Mr. William Wade Hampton,* for petitioner in Nos. 73 and 74, submitted. *Mr. Hilton S. Hampton* and *Mr. S. S. Sanford* were also on the briefs.

*Mr. Henry C. Clark* and *Mr. W. E. Kay,* with whom *Mr. J. L. Doggett* and *Mr. L. A. Dean* were on the briefs, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

These cases were argued and submitted together. They involve the same questions of law and the essential facts are the same in each. Reference will, therefore, be made only to No. 76.

The First National Bank of Rome, Georgia, endorsee of five certificates of deposit made by the Bank of Jasper, a Florida corporation, sued the maker at law in the federal court for the Southern District of that State. The defendant pleaded in bar seven decrees of the Circuit Court for Hamilton County, Florida, entered in suits in which the Georgia bank had been named as one of the respondents. The plaintiff replied that the suits in which these decrees were entered were *in personam;* that it was and is a non-resident of Florida, had not been found within the State, and had not appeared in those suits except specially to move to quash the pretended constructive service upon it by publication; and that the decrees are as to it of no legal effect. The District Court sustained the plea of *res judicata* and entered judgment for defendant. The judgment was reversed by the Circuit Court of Appeals. See *First National Bank of Rome* v. *First National Bank of Jasper,* 264 Fed. 83. The case comes here on writ of certiorari. 254 U. S. 622. Whether on the facts hereinafter set forth the state court acquired jurisdiction and the legal effect of the decrees are the matters presented for our consideration.

The Rome Insurance Company of Georgia wished to raise capital by selling shares of its stock. To aid it in so doing the American Bank and Trust Company, also of Rome, was appointed agent or trustee. These two companies selected Jasper, Florida, as the field of operations for the stock selling campaign; and they secured the Bank of Jasper as an ally. Then, to facilitate sales the

three devised the following plan:   Purchasers of the stock were enabled to discount at the Jasper bank their one year notes for an amount equal to the purchase price, giving the stock as collateral; and the American Company as trustee for the Insurance Company agreed to deposit with the Jasper bank an amount equal to each discount, taking that bank's negotiable certificate of deposit in the usual form, payable in one year with interest at four per cent.   Thus the stock purchased was paid for; the Jasper bank made discounts and received deposits; the Insurance Company raised capital and had it paid up—all without anybody parting with a cent in cash.   Under this arrangement many citizens of Jasper bought stock in the Insurance Company.   In time their notes, and likewise the corresponding certificates of deposit, matured.   The purchasers of the stock discovered that it was worthless, and that they had been defrauded; the Bank of Jasper that it, also, had been defrauded and that its certificates of deposit had been transferred to the First National Bank of Rome.   There was default on the certificates of deposit; and the First National Bank brought this action against the Bank of Jasper in the federal District Court.   But a few days before it did so, each purchaser of stock had filed a bill in equity in the state Circuit Court against the Jasper bank and the three Rome corporations.   It is the final decrees entered in these suits eighteen months later which are pleaded in bar of this action on the certificates of deposit.

Each bill recited, in substance, the above facts and alleged that the note given by the complainant was in the hands of the Jasper bank, that the proceeds [of the discount] were deposited with it, that the certificate of deposit issued to the American Company covers such proceeds, and that they have ever since remained in the bank. The bill prayed that these proceeds be impressed with a trust in favor of the complainant; that the First National

9544°—23——11

Bank of Rome be declared not to have any interest therein; that the certificate of deposit, the note and the contract to purchase the stock be declared void; that the American Company, the Insurance Company and the Jasper bank be restrained from bringing suit against the complainant; that the Jasper bank be restrained from making any payment to the First National Bank out of the proceeds of the complainant's note; and that the latter bank be restrained from withdrawing any part of such proceeds.

None of the three Rome corporations was domiciled or found in the State of Florida. Constructive service by publication in a newspaper was made under the Florida law. General Statutes, § 1866. Then the three corporations entered their "appearance specially, solely and only for the purpose" of moving to quash the service. The motion was overruled; the defendants were given time to plead, but did not do so; and again, appearing "specially, solely and only" for that purpose, entered their appeal to the Supreme Court of Florida from the order overruling the motion to quash the pretended service by publication. And also appearing "specially, solely and only". for that purpose, they applied to the Circuit Court for an order fixing the terms of the supersedeas on the appeal. That the notice of this application given counsel for complainant "shall in no sense operate as a general appearance" was stipulated by them; and, thereupon, the order of supersedeas was made and the required bond given. It was suggested in the Supreme Court that the appeal operated as a general appearance and, therefore, rendered the question submitted moot; but the court did not pass upon this objection. It declared that "the purpose of the statute authorizing constructive service by publication is to notify non-residents of the pending suit [in equity] so that they may, if they care to do so, come into the case, and if the statute be followed, there is no right in the non-resident to quash this notice; he has

his right if not waived, to object should the court there-
after commit an error against him. " And it affirmed the
order of the lower court. *Rome Insurance Co.* v. *Corbett.*
66 Fla. 438.

The three Rome corporations took no further part in
the suits in the state courts. But in the Circuit Court a
decree *pro confesso* was entered as against all the respon-
dents, which declared that the sale and purchase of the
stock was void; that the proceeds of the complainant's
note " included in said certificate of deposit No. 319 now
held by the First National Bank of Rome are hereby de-
creed to be impressed with a trust in favor of the com-
plainant and the same are adjudged to belong to him.";
that the Bank of Jasper be enjoined from paying any part
of these proceeds to the First National Bank; and that
the certificate of deposit " in so far as it covers and in-
cludes the proceeds derived from the said note " was void.
The Bank of Jasper insists that these decrees are *res judi-
cata* of its alleged liability to the First National Bank on
the certificates of deposit, first, because they are valid
judgments *in personam* against the latter bank; and;
secondly, because the certificates of deposit represent the
proceeds of the notes, and these proceeds were a *res* within
the jurisdiction of the court, and there was thus juris-
diction *in rem* to adjudicate the alleged liability on the
certificates of deposit.

The contention that the decrees constitute personal
judgments against the First National Bank rests upon the
assertion that under the law of Florida an appeal operates
necessarily as a general appearance, although the appeal
is taken solely from an interlocutory order asserting juris-
diction, and, although in taking it, the appellant declares
in terms that his appearance is special, and solely for the
purpose of the appeal. It may be assumed that if such
were the settled law of Florida, it would be accepted by
this court as controlling. *York* v. *Texas,* 137 U. S. 15.
But our attention has not been called to any Florida

statute or rule of court or decision which so declares. There is confessedly no statute or rule of court to that effect; and none of the cases relied upon support the proposition that such is the common law of Florida. This contention seems to have been made in the equity suits here under consideration; but the Supreme Court did not there pass upon the question. *Rome Insurance Co.* v. *Corbett, supra*, p. 439. It is clear that in Florida an appearance entered in the trial court specially for the purpose of moving to quash a summons does not operate as a general appearance. *Standley* v. *Arnow*, 13 Fla. 361, 368; but that if, after such a motion is made and overruled, the cause proceeds to final decree, a defendant who prosecutes an appeal therefrom will be held to have appeared generally. The appeal here in question was not from a final decree. It was from an interlocutory order overruling the objection to the jurisdiction. The right to review an interlocutory order by a separate appeal is conferred broadly by § 1908 of the General Statutes of Florida; and there is nothing to indicate that the right does not extend to orders concerning jurisdiction. It certainly may not be assumed that the legislature intended that exercise of the right conferred should operate as a general appearance and thus render moot a consideration of the ruling alone sought to be reviewed. Moreover, in none of the cases from the Supreme Court of Florida relied upon was it shown that the appearance on appeal was in terms special and limited to the review of the question of jurisdiction.[1]

The contention that the proceeds of the discounts of the notes constitute a *res* within the State, of which

---

[1] *Tunno* v. *Robert*, 16 Fla. 738, 751; *Shrader* v. *Shrader*, 36 Fla. 502, 518; *Wylly* v. *Sanford Loan & Trust Co.*, 44 Fla. 818, 820; *Drew Lumber Co.* v. *Walter*, 45 Fla. 252, 255; *Rumeli* v. *Tampa*, 48 Fla. 112, 114; *Hayman* v. *Weil*, 53 Fla. 127, 132; *Barwick* v. *Rouse*, 53 Fla. 643, 646; *Busard* v. *Houston*, 65 Fla. 479, 482; *Henry* v. *Spitler*, 67 Fla. 146, 150.

the certificates of deposit were merely evidence, rests upon a misapprehension. No specific fund was ever set apart by the Jasper bank. Its discounts resulted in general credits by the bank to the makers of the notes. These credits were applied in making payment for their stock. The payment was made by transferring to the credit of the American Company the amount which stood to the credit of the makers of the notes. The credits—called deposits—so transferred became an indebtedness of the Jasper bank to the American Company. That indebtedness, if it had rested in open account, would have been property of the creditor within the State of Florida. In an appropriate proceeding it might have been reached to satisfy a claim against its owner. *Pennington* v. *Fourth National Bank,* 243 U. S. 269. But the suits in the state court were not proceedings of that character. In them the complainant asserted that, by reason of the fraud alleged, the Jasper bank was indebted not to any of its corespondents, but to the complainant. Moreover, there was no indebtedness on open account to any of the Georgia corporations; for this account had been closed by giving certificates of deposit; and these had been transferred to the First National Bank. Such certificates are merely promissory notes of the Jasper bank, payable like unsecured notes of individuals, out of general assets. Like other notes they are negotiable and are payable only upon surrender of the instrument properly endorsed. There is not even an allegation either that the transfer to the First National Bank had been made after maturity of the certificates or that the endorsee took them with notice of the fraud.

As neither the certificates of deposit nor the holder thereof were within the State of Florida, its courts could not—in the absence of consent—acquire jurisdiction to determine the liability of maker to holder.

*Affirmed.*