## SELIGMANN v. MILLS.

Circuit Court of Appeals, Eighth Circuit.
April 2, 1928.

No. 7820.

1. **Courts ⬅⬅19—State court held not to have acquired jurisdiction of suit in rem to impound property of nonresident corporation not served.**

A Delaware corporation held 36 notes of another Delaware corporation, secured by a deposit of mortgage bonds of the debtor in escrow, to be delivered to the creditor on default in payment of any of the notes, which matured all others. The creditor sent 4 of the notes, which were past due and unpaid, to the escrow depositary in New York as evidence of default, and the depositary delivered to it the collateral bonds. *Held*, that the debt was a single debt, of which the notes were only evidence, and its situs was in Delaware, the domicile of the creditor, which owned the notes; that the fact that 4 of the notes were in possession of the escrow depositary in New York did not give a court of that state jurisdiction of a suit in rem against the creditor corporation, without personal service, to impound the 4 notes by supplementary proceedings, and that a receiver appointed by that court acquired no right to any part of the debt which entitled him to intervene in a suit to enforce the same against the maker of the notes.

2. **Corporations ⬅⬅479—Mortgage trustee held not vested with interest subject to seizure in suit against bondholder.**

The trustee in a corporate mortgage securing bonds, domiciled in New York, which had not taken possession of the property, situated in another state, nor exercised any of its powers as trustee, *held* not vested with any title or interest which could be reached on execution or proceedings supplementary thereto in New York against a bondholder.

3. **Courts ⬅⬅19—Nonnegotiable notes, sent by the owner to another state for a temporary purpose, held not property in that state which gave a court there jurisdiction to seize and sell them in an action in rem, on substituted service.**

Where the payee of a series of notes, resident in Delaware, sent 4 of them, past due and not indorsed, to the depositary of collateral security in New York, solely as evidence of the default, which entitled the holder to the collateral, but after the collateral had been delivered the depositary continued to hold the notes, though without authority and in violation of its duty to return them, they did not become property in New York, and a court of that state was without jurisdiction to seize them in a suit in rem, on substituted service, against the owner.

Appeal from District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit in equity against the Perfection Tire & Rubber Company. Rudolph A. Seligmann, intervener, appeals from a decree in favor of Charles W. Mills, intervener. Affirmed.

A. Hollingsworth (Hollingsworth & Hollingsworth, on the brief), for appellant.

C. D. Waterman (Joe R. Lane and Lane & Waterman, on the brief), for appellee.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

WALTER H. SANBORN, Circuit Judge. The Perfection Tire & Rubber Company, a corporation of the state of Delaware, the owner of a manufacturing plant, real and personal property in Iowa, of the value of several hundred thousand dollars, in December, 1921, made a mortgage deed of trust to the Corporation Trust Company, domiciled in the state of New York to secure the payment of an issue of its bonds to the amount of $1,500,000. The Nemours Trading Corporation was also a corporation of the state of Delaware. About April, 1922, the tire company made, signed, and delivered to Nemours 38 contracts, called notes, of like tenor and effect, except that one of the notes was payable on May 1, 1922, and one and only one of the other 37 was payable on the 1st day of each of the succeeding 37 months. Each of these notes contained an agreement of the tire company to pay Nemours $25,000 and interest on a day certain named in it; that as collateral security for the payment of all these notes the tire company pledged its bonds and mortgage on its property at Ft. Madison, Iowa, by virtue of an escrow agreement between the tire company and the Corporation Trust Company; that the tire company gave the payee of the notes and its assigns authority to collect and to otherwise convert the security therefor, and to sell the said property securing the payment of these notes, or any substitute therefor, on the maturity and default in payment of any of these notes, and to apply the proceeds of such sale to the payment of the defaulted note, and of any and all other notes executed simultane-

ously with the note defaulted, and, if necessary, to seize and sell any securities for the payment of any of these notes and to apply the proceeds to their payment.

Each of these notes contained the agreement that, upon default in the payment of any one of them upon the date of its maturity, all of them which by their terms matured thereafter should become due, and the collateral held as security for each and all of said notes might be sold by the payee, converted into money, and the proceeds thereof applied to the payment of all the notes still unpaid.

To secure the payment of these 38 notes the tire company about April, 1922, had, pursuant to an escrow agreement, made and delivered to the Corporation Trust Company its bonds, of the face value of $1,500,000, secured by a mortgage on its property in Iowa. The escrow agreement provided that, in case the tire company defaulted in the payment of any of the 38 notes, these bonds should be delivered by the Corporation Trust Company to Nemours. The tire company defaulted on July 1, 1922, in the payment of $10,000 of the $25,000 note due on that day, and thereupon automatically the 36 unpaid notes of later dates became due, and, pursuant to the terms of the escrow agreement, were delivered by the Corporation Trust Company to Nemours.

Subsequent to July 1, 1922, and prior to October 3, 1922, Nemours, which was still in possession of these notes in the state of Delaware, delivered to the Corporation Trust Company in New York City the notes payable July 1, 1922, August 1, 1922, September 1, 1922, and October 1, 1922, as evidence pursuant to the terms of the trust agreement of the default of the tire company in the payment of these notes, and hence of the default in the payment of all the notes. The remaining 32 notes were, and have since been, in the possession of Nemours and its successor in interest. The remaining bonds, pursuant to an agreement that upon the default of any of the notes the bonds held by the Corporation Trust Company should be delivered to Nemours, were delivered to it, and still remain in its possession, or in the possession of its successor in interest. The face value of these remaining bonds was $1,302,500.

On November 8, 1922, presumably in a suit in equity for the impounding, seizure, and application of all its property to the payment of its debts, a proper court in the state of Delaware, the domicile of the tire company and of Nemours, appointed a receiver of all the property of the tire company in the state

of Delaware. On the 17th day of November, 1922, ancillary receivers were appointed for the Perfection Tire & Rubber Company by the United States District Court for the Southern District of Iowa, in which district was the principal place of business of that company. Thereupon, pursuant to an order of the court below made on November 13, 1923, all this property was sold by these receivers free of all liens and incumbrances, and those liens and incumbrances were imposed upon the proceeds of the sale, which, after expenses and payments theretofore made from it, amounted on February 1, 1926, to about $190,000.

The owner of each dollar of that part of this fund applicable to the payment of the debt evidenced by the 36 notes is entitled to receive out of this fund the same percentage of his dollar of debt as the owner of every other dollar of that debt. The appellee, who has succeeded to the rights and equities of Nemours, claims, and the court below has decided, that he is the owner of the entire debt secured by the 36 notes, and to all that portion of the fund in court applicable to the entire debt evidenced by those notes. The appellant, Rudolph A. Seligmann, claims that he is entitled to that part of the fund in court applicable to the payment of that part of the debt of the tire company evidenced by the four notes in the possession of the Corporation Trust Company. He claims this portion of the fund by virtue of a judgment which Irving W. Frankel procured against Nemours for $16,664.88 on March 7, 1923, in the Supreme Court of New York County, New York, and supplementary proceedings to an execution on that judgment, wherein he was appointed by order of that court receiver of "all of the rights, powers, title, property, and interest, legal or equitable, whether in possession or in action, which the Nemours Trading Corporation, judgment debtor herein, has or may have against the said Corporation Trust Company, or which the said Nemours Trading Corporation has or may have in any and all property held or controlled by the Corporation Trust Company at the commencement of these special proceedings, and that the said receiver be invested with full power to sue, recover, and reduce to judgment all claims of any kind whatsoever and against any person whomsoever that the said Nemours Trading Corporation has or may have in relation to any property in the possession or control of the said Corporation Trust Company."

[1] The first and controlling issue in this case is whether or not Seligmann, the receiver in the Frankel case, has or ever had any cause

of action or right that he was entitled successfully to present to the court below. The Frankel case was in reality a proceeding in rem. The Nemours Trading Corporation, the defendant, was a corporation of Delaware. It had no domicile in New York, and was not present there. No service of any summons or writ or notice to answer or defend against Frankel's complaint was ever served on or given to it at its domicile in Delaware. The jurisdiction, if any, of the court in New York was entirely in rem, and the res in that proceeding was that part of the debt of the tire Company to Nemours evidenced by the four notes in possession of the Corporation Trust Company in the city of New York. That debt was a single debt, evidenced by 36 notes, each of the same tenor and effect, save that the dates of the maturities of the 36 notes differed. On October 3, 1922, for the sole purpose of evidencing the default of the tire company in the payment of the portion of the debt evidenced by the four notes, Nemours sent those notes to the trust company. The res Frankel sought by his proceeding to seize and apply to the payment of Nemours' debt to him was ⁴⁄₃₆ of the debt of the tire company to Nemours, not the four notes which evidenced that ⁴⁄₃₆ of the debt.

As early as 1879 the Supreme Court of the United States, in an opinion delivered by Mr. Justice Harlan, discussing the taxation of a debt in the state that was the domicile of the creditor evidenced by a bond located in another state, said:

"That debt, although a species of intangible property, may, for purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and maturity are set forth in a bond. That bond, wherever actually held or deposited, is only evidence of the debt, and if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest— remains. Nor is the debt, for the purposes of taxation, affected by the fact that it is secured by mortgage upon real estate situated in Illinois. The mortgage is but a security for the debt, and, as held in State Tax on Foreign-Held Bonds, supra, the right of the creditor 'to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand, * * * has no locality independent of the party in whom it resides.'" Kirtland v. Hotchkiss, 100 U. S. 491, 498, 25 L. Ed. 558.

In the case of State Tax on Foreign-Held Bonds, 82 U. S. (15 Wall.) 300, 320, 21 L. Ed. 179, the Supreme Court declared that:

"Debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever they may be. Their debts can have no locality separate from the parties to whom they are due."

The rules and principles thus expressed seem to us to be applicable to the facts of this case. If they are, then all the property of Nemours in the debt of the tire company was at and in its domicile, the state of Delaware, and there was no res or part of a res subject to the jurisdiction of the New York court in this case.

[2] Counsel for Mr. Seligmann, however, contend that Nemours had property in New York subject to levy by the New York court in the Frankel case when that action was commenced, because the trust deed which secured the payment of the mortgage bonds of the tire company by its terms conveyed all the property of the tire company wherever situated to the Corporation Trust Company in trust, in case of default of the tire company, to sell and apply the proceeds of that property to the payment of the bonds secured thereby. This trust deed, however, vested no interest in the title to or possession of any of this property in Nemours, except the equitable interest of a cestui que trust in the possible proceeds that might in case of default and sale under the trust deed be realized, not for the use or benefit of the trust company, but for the use and benefit of its cestuis que trust. Of this contention of counsel for Mr. Seligmann, the special master said:

"The theory that the trustee, before possession of the property was taken by it, had a title which could be reached on execution or proceedings supplementary thereto in New York, is not supported by any authority so far as I can find. Such a theory would put all property wherever situated in the United States or elsewhere within the jurisdiction of the laws and courts of New York merely because the trustee happened to be domiciled there, and even though the trustee did not have possession in New York or elsewhere of a single dollar's worth of property."

The court below approved and confirmed this statement and conclusion.

Moreover, the Corporation Trust Company

never exercised any of its powers to foreclose the trust deed, seize or take possession of or sell the mortgaged property, or do anything for itself or as trustee, except to apply to the court below for a share of the proceeds of the mortgaged property of the tire company which the ancillary receivers had collected by their sale of the property in the state of Iowa and by the order of the court below. All the proceeds of the property of the tire company, all the funds which have been collected and are now in the court below for distribution, were obtained, not through any action of the trust company, but by the action of the ancillary receivers in this case under and pursuant to the orders of the court below. The trust company has never had in its possession any of the bonds issued by the tire company as security under the trust deed since the 3d day of October, 1922, when it delivered them to Nemours; it never had in its possession in the state of New York any of the property conveyed by the tire company to the Corporation Trust Company; it never, under any authorization from the bondholders or upon its own initiative, at any time proceeded under the terms of the trust deed to foreclose the mortgage or deed of trust. The property described in the trust deed was sold in the ancillary receivership pending in the court below under its order made on November 13, 1923, and by the order of the court below all liens upon it were transferred to the proceeds of its sale. There was in our opinion no error or mistake of the special master or the court below in their conclusion that the Corporation Trust Company held no property of Nemours in the state of New York subject to levy or impounding, or to the jurisdiction of the court in New York in the action or proceedings in the case of Frankel v. Nemours on account of the conveyance in the trust deed of all the property of the tire company to the trust company to secure the payment of the bonds of the tire company.

[3] Counsel for Mr. Seligmann, however, argue that because, on October 3, 1922, Nemours in Delaware sent to the Corporation Trust Company in New York the four notes for the sole purpose of evidencing, according to the terms of the escrow agreement, the default of the tire company in their payment when due, and, after they had served that purpose the Corporation Trust Company failed to return them to Nemours in New York, the res in the Frankel case, the right to and property of Nemours in that part of the tire company's debt to Nemours evidenced by these four notes was transferred to New York, and subject to levy, seizure, sale, and application to the payment of Nemours' debt to Frankel by the courts of New York, without personal service of writ or notice to answer or defend.

Before discussing this contention, it will be well to consider Mr. Seligmann's assignment that the court erred in sustaining the report of the special master that his motion to substitute in Exhibit A of the agreed statement of facts for the words, "promises to pay to the Nemours Trading Corporation," the words, "promises to pay to the *order* of the Nemours Trading Corporation," should be denied, and that the court erred in denying Mr. Seligmann's motion to permit him to submit additional proof that the Nemours Trading Corporation duly appeared by its attorneys in the proceedings in the Supreme Court of the state of New York wherein he was appointed receiver. The purpose of the substitution sought was to prove, if possible, that the notes were payable to the order of Nemours and therefore negotiable.

The agreed statement of counsel on which this case was tried was filed on April 21, 1925. It contained a copy of one of the notes, and a stipulation that this copy was of the same tenor as each of the 36 notes, except that they differed in their due dates. They were all past due, not indorsed, not payable to bearer, not assigned; they were signed and sealed by the tire company; they were specialties.

On June 25, 1925, the case was referred to a special master to hear the evidence, find the facts, and recommend a final decree upon the issues presented to the court by Mr. Seligmann as receiver in the Frankel case. The master filed his report on February 1, 1926, and held that Mr. Seligmann as receiver was entitled to receive out of the proceeds of the property applicable to the payment of the debt of the tire company evidenced by the 36 notes the portion of the proceeds applicable to the payment of that part of the debt evidenced by the four notes. On an exception to this conclusion the court below overruled it, and decreed on June 28, 1926, that the portion of the proceeds applicable to the payment of the four notes should be paid to the intervener Mills. Thereupon counsel for Mr. Seligmann presented to the court below a motion for a rehearing and reconsideration of his petition of intervention on the grounds (1) that by mistake and a clerical error his counsel had signed the stipulation on which the case was heard and decided that the notes were payable to the Nemours Corporation, when the fact was that they were payable to the order of the Nemours Corporation; and

(2) that there be a rehearing, in order that counsel for Seligmann might introduce evidence that the attorneys for Nemours Trading Corporation were not only notified, but actively entered an appearance, in the supplementary proceedings in the Frankel case.

The court below referred the motion to the special master, who received evidence from counsel for Mr. Seligmann and for Mr. Mills, considered the evidence, prepared and filed an elaborate report, in which he reviewed the evidence and concluded "that the motion to correct the record and for a rehearing should be and the same is overruled and denied." Exceptions to this report were filed and the court below, after consideration, declared on November 17, 1926, "that the report of the master is correct; the records should not be allowed to be corrected after the submission of the case and the finding by the court in the report filed June 28, 1926." We have read the evidence, the briefs, and arguments upon this motion, and are not convinced that there was any error prejudicial to Mr. Seligmann in the action or refusal to act of master or court regarding this motion.

Did the sending of the four notes by Nemours to the Corporation Trust Company on October 3, 1922, for the sole purpose of informing it, as required by the escrow agreement, that the tire company had failed to pay them when due, transfer Nemours' property in the res in the Frankel case, its property in the debt of the tire company to it evidenced by these notes, from the state of Delaware, the domicile of both Nemours and the tire company, so as to subject that part of the debt to seizure and application by the courts of New York through substituted service to the payment of the debt of Nemours to Frankel?

By the opinion of the Supreme Court in Pennoyer v Neff, 95 U. S. 714, 24 L. Ed. 565, it is settled that no state can exercise direct jurisdiction and authority by its Legislature or its courts over persons or property without its jurisdiction (page 722), and that, if the nonresidents have no property in the state, there is nothing on which its tribunals can adjudicate (pages 723, 724). It is settled by the opinion in Riverside Mills v. Menefee, 237 U. S. 189, 194, 195, 35 S. Ct. 579, 581, (59 L. Ed. 910), that "it is undubitably established that the courts of one state may not, without violating the due process clause of the Fourteenth Amendment, render a judgment against a corporation organized under the laws of another state, where such corporation has not come into such state for the purpose of doing business therein, or has done no business therein, or has no property therein, or has no qualified agent therein upon whom process may be served."

But, when the facts and decisions in relevant and persuasive cases are carefully and thoughtfully considered, it clearly appears that it has been the particular facts of each case that really conditioned the decision of the question whether there was property in the defendant within the jurisdiction of the court. In First Nat. Bank of Rome, Ga., v. First Nat. Bank of Jasper, Fla. (C. C. A.) 264 F. 83, 84, 88, the question was whether or not there was any res within the jurisdiction of the circuit court of the county of Hamilton, Florida, when it rendered a judgment on substituted service in an action by one Corbett against the Jasper bank and others who were nonresidents of Florida. The Circuit Court of Appeals for the Fifth Circuit said:

"The supposed res was the proceeds of a note which the plaintiff, Corbett, had discounted at the Jasper bank, for the purpose of paying for shares of the capital stock of the Rome Insurance Company, which he claimed to have been induced by fraud to purchase. The proceeds of the note were paid to the trustee for the insurance company, and immediately deposited by him in the Jasper bank, which issued its certificate of deposit therefor to the said trustee. The present suit is brought by the holder of the certificate of deposit. It is upon the theory that the proceeds of the note, so deposited in the Jasper bank, created a specific fund in that bank, control of which could be and was acquired by the Hamilton county circuit court by order of that court restraining its disposition, and thereby impounding it, that the two Florida courts acted. The correctness of the theory is essential to the jurisdiction of the Florida circuit court, for if there was no fund there could be no jurisdiction acquired by substituted service."

And the Circuit Court of Appeals held that there was no such fund, no res, and reversed the decree below, which opinion was affirmed by the Supreme Court, 258 U. S. 112, 42 S. Ct. 202, 66 L. Ed. 490.

Section 57 of the Judicial Code (28 USCA § 118) provides that, when in any suit commenced in any District Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district where such a suit is brought, one or more of the defendants therein shall not be an inhabitant of or found in the district, substituted service

may be had upon him or them. In Crichton v. Wingfield, 258 U. S. 66, 76, 42 S. Ct. 229, 232 (66 L. Ed. 467), such a suit was brought by a citizen and resident of the state of New York against a citizen and resident of the state of Mississippi to settle the title to certain promissory notes held and present in the state of New York, but the court held that the mere presence of the notes in New York did not give them such "localized character lawfully within the Southern district of New York which would justify foreign service upon a nonresident and bring him or her to the local jurisdiction to contest title to the notes."

Cases involving the taxation by a state of property of aliens and residents of other states are instructive and persuasive upon the subject.

In De Ganay v. Lederer, 250 U. S. 376, 381, 382, 39 S. Ct. 524, 63 L. Ed. 1042, the Supreme Court held that under the income tax of October 3, 1913, c. 16, § II, A, subd. 1, 38 Stat. 166, which imposed such a tax upon income from "property owned * * * in the United States by persons residing" there or elsewhere, the income derived from bonds issued by domestic corporations and mortgages secured on domestic real estate which were owned by an alien nonresident but were in the hands of an agent in this country empowered to sell, assign and transfer any of them and to invest and reinvest the proceeds as it might deem best, were subject to this income tax.

In Buck v. Beach, 206 U. S. 392, 27 S. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732, Mr. Nash, a resident of the state of New York, had about $750,000 invested in the states of Ohio and Indiana during the years from 1861 to 1893, inclusive. The moneys loaned by him in Ohio were evidenced by Ohio notes secured by mortgages on lands in Ohio, were dated and payable in Cincinnati to the order of Mr. Nash, were not indorsed by him, and all renewals and payments on account of them were made to his agent in Cincinnati, and all moneys paid on them were deposited in a bank in Cincinnati to the credit of Mr. Nash. James Buck was the agent of Mr. Nash at Lafayette, Ind., for many years before the death of Mr. Nash. The Ohio notes were sent to him, together with the mortgages securing them, and they were kept in a safe at Lafayette, Ind., by Mr. Buck; but no business was transacted in regard to them, nor was any use made of them in Indiana, otherwise than that, a short time before the interest or principal became due, they were sent to the Ohio agent to have the interest payments made indorsed on them, or to be delivered up

if the principal were paid. The question in the case was whether the property evidenced by these Ohio notes or mortgages was taxable in the state of Indiana. The Supreme Court reviewed the cases of New Orleans v. Stempel, 175 U. S. 309, 20 S. Ct. 110, 44 L. Ed. 174, and State Board of Assessors v. Comptoir National, 191 U. S. 388, 24 S. Ct. 109, 48 L. Ed. 232, and distinguished them on the ground that the property there taxed had been used by the owners in conducting their business in the taxing state, and decided that the Ohio notes and mortgages were not taxable in Indiana, and concluded: "We cannot assent to the doctrine that the mere presence of evidences of debt, such as these notes, under the circumstances already stated, amounts to the presence of property within the state for taxation." 206 U. S. 406 (27 S. Ct. 717).

In Wheeler v. New York, 233 U. S. 434, 34 S. Ct. 607, 58 L. Ed. 1030, the laws of that state had imposed a tax "when the transfer is by will or intestate law, of property within the state, and the decedent was a nonresident of the state at the time of his death." Tiffany, the owner at the time of his death, was not a resident of New York, and he left four promissory notes of Pottinger, a resident of Chicago, secured by mortgages on Chicago real estate to Illinois trustees, and promissory notes of the Southern Railway Company, a Virginia corporation, in a safe deposit box in New York. This box was evidently the intentional customary resting place of these notes, to protect and secure their possession. They were negotiable commercial paper. The Supreme Court held them taxable by the state of New York, and distinguished the decision of that court in Buck v. Beach, 206 U. S. 392, 27 S. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732. Mr. Justice Holmes said the Ohio notes in that case "really were in Ohio hands for business purposes (Ibid. 395), and sending them to Indiana was spoken of by Mr. Justice Peckham as improper and unjustifiable (Ibid. 402). Their absence from Ohio evidently was regarded as a temporary absence from home. Ibid. 404." The statements of fact in this quotation are equally applicable to the notes in the case in hand.

Many other authorities have been read and considered. They demonstrate the fact that the particular facts of each case conditioned the decision of the question whether in that particular case the alleged res was subject to seizure and sale on substituted service or to taxation in the state in which the respective proceedings were taken. The authorities seem to require, in order to reach the prop-

erty by substituted service or make it taxable, that the presence of the res be with and not against the will of the owner, for a substantial business or protective purpose, not for a purpose disconnected with the substantial business of the owner, or the safety of the res, or as a resting place of the res for a substantial length of time, not for a momentary, fleeting period.

The res in the case at hand, that portion of the debt of the tire company to Nemours evidenced by the four notes, was in Delaware, the domicile of the tire company, the debtor company, and of Nemours, its owner, the creditor, on October 2, 1922. On October 3, 1922, Nemours sent the notes to the Corporation Trust Company in New York, not for use in the conduct of its business, not for an abiding place to secure their safety, but for the sole purpose of evidencing the failure of the tire company to pay them at the times they came due. Nemours did not assign them, it did not intend that they should remain in the possession of the trust company for safe-keeping after that corporation had seen that they were in default, and that did not require more than two or three hours. It intended that the Corporation Trust Company should return them to it in Delaware, and it was the duty of that company to do so, although it did not do so. These notes were signed and sealed by the debtor, the tire company. They were specialties. They were not assigned; they were not indorsed by their owner, Nemours; they were past due; they were not negotiable. The only security for their payment was the property of the tire company in the state of Iowa, which the court below had held and been administering ever since November, 1922. The court below decided that under these facts the alleged res in the Frankel case did not exist in the state of New York, and was not subject to seizure, sale or attachment upon substituted service.

In our opinion that decision was right, and it is affirmed.