STATE OF NORTH CAROLINA ON RELATION OF CHARLES F. GOLD, COMMISSIONER OF INSURANCE, PETITIONER v. EQUITY GENERAL INSURANCE COMPANY, RESPONDENT.

(Filed 16 June, 1961.)

**1. Appeal and Error § 4—**

 Only the "party aggrieved," who is one whose rights have been directly and injuriously affected by the action of the court, may appeal from the Superior Court to the Supreme Court. G.S. 1-271.

**2. Same: Receivers § 5— Persons not parties and whose rights could not be precluded by judgment, may not appeal.**

In an action instituted by the ancillary receiver of an insolvent insurance company, order restraining a North Carolina bank from paying out funds represented by certificates of deposit purchased by the insurance company was continued to the hearing. Nonresidents, who were not parties to the action, made a special appearance solely to test the jurisdiction of the court and appealed from the order continuing the temporary restraining order. It appeared from the findings upon evidence introduced solely by the parties to the action that the certificates of deposit had been transferred to the nonresidents, and such parties attacked the validity of this transfer. *Held:* Claims of the nonresidents could not be precluded by judgment in the action to which they were not parties or served with summons, and such nonresidents were not parties aggrieved by the order continuing the temporary restraining order, and their appeal therefrom must be dismissed.

APPEAL by First Bank of Brighton, Brighton, Colorado, and American National Bank of Denver, Denver, Colorado, from an order dated March 11, 1961, entered by *Bickett, Resident Judge,* in an action pending in the WAKE Superior Court.

On September 23, 1960, J. Edwin Larson, State Treasurer and *ex officio* Insurance Commissioner of the State of Florida, was, by order of a Circuit Court in and for Leon County, Florida, appointed Domiciliary Receiver of Equity General Insurance Company (Equity). Equity, incorporated under the insurance laws of Florida, had its principal office and place of business in Miami, Florida, with Administrative Offices in Boulder, Colorado. Equity is insolvent.

In this cause, on September 27, 1960, Charles F. Gold, Commissioner of Insurance of the State of North Carolina, was appointed temporary Ancillary Receiver of Equity and, by order of October 15, 1960, his appointment as Ancillary Receiver was made permanent. The Ancillary Receiver was authorized and directed to recover and hold all assets of Equity located in this State. G.S. 58-155.12; G.S. 58-155.19.

The said Receivers were appointed in Florida and in North Carolina, respectively, under the terms of the Uniform Insurers Liquidation Act.

On December 19, 1960, the Resident Judge, based on the affidavit and motion of the Ancillary Receiver, entered a temporary order restraining the North Carolina National Bank "from paying out the $125,000 on deposit with the bank in the name of Equity General Insurance Company or any of the interest on said principal amount, all of which is represented by outstanding Certificates of Deposit Nos. 1, 2, 3, 4 and 5 issued by North Carolina National Bank at Burlington, North Carolina on July 5, 1960 in amounts of $25,000 each, with interest at the rate of 3%, to mature on January 1, 1961, until

further Order of this Court." The Order directed the North Carolina National Bank "and any other persons or parties claiming an interest in the deposits or Certificates of Deposit" to appear at a designated time and place "to show cause, if any there may be, why this Order should not be continued in full force and effect until a determination by this Court as to the rights of the Ancillary Receiver and all other interested parties in the deposits and Certificates of Deposit."

Answering, the North Carolina National Bank alleged both the Domiciliary Receiver and the Ancillary Receiver had demanded payment of the $125,000.00 deposit represented by said certificates; that the Brighton Bank had demanded payment of Certificates Nos. 4 and 5; and that the Denver Bank had demanded payment of Certificates Nos. 1, 2 and 3. It alleged it had "refused to pay said funds to anyone and still refuses to pay out said funds without a surrender of said Certificates of Deposit, or until claimants therefor agree upon the ownership thereof, or until the ownership thereof is otherwise legally determined." It asserted it was a mere stakeholder; that it was ready and willing to pay the said sum of $125,000.00 to such person or persons as may be lawfully entitled thereto but was unable to determine the lawful ownership thereof; and that it was threatened with litigation by each of several claimants. It prayed "for the direction and protection of this Court" and "that said claimants be required to interplead with each other to determine herein their respective rights to said funds" and that it "be relieved and discharged from any and all liability on account of such funds except as otherwise legally determined by judgment herein."

A petition for intervention was filed by "T. B. Jones Insurance Service, Inc. and Affiliated Offices." Attached to said petition are (1) a copy of a contract dated June 1, 1959, in which Equity appointed "T. B. Jones Insurance Service, Inc. and Affiliated Offices, Burlington, N. C." as its exclusive General Agent in all states east of the Mississippi River except Wisconsin, Illinois and Rhode Island, and (2) a copy of a proof of claim for $82,257.02 filed by said petitioner with the Ancillary Receiver in which said petitioner asserts a "(p)referred or secured" claim against the funds deposited in the name of Equity as "Escrow Deposits" in the North Carolina National Bank.

The hearing before Judge Bickett was to determine whether the restraining order he had issued on December 19, 1960, should be continued in effect. At said hearing, the Brighton Bank, through its counsel, and the Denver Bank, through its counsel, "appeared specially, solely and only for the purposes of challenging the jurisdiction of the Court." No affidavit, motion or other writing was filed by or on behalf of these Colorado banks.

This summary of Judge Bickett's findings of fact is sufficient, for present purposes, to indicate the nature of the claims of the Ancillary Receiver and of the intervenor to the alleged "Escrow Deposits," now represented by said certificates of deposit.

T. B. Jones Insurance Service, Inc., and Seaboard Underwriters, Inc., as General Agents, had issued Equity's liability policies to companies in this and other states engaged in the long-haul trucking business. The insureds had deposited with said General Agents the amount of the estimated premiums therefor. These were held as "Escrow Deposits." If policies were cancelled, the insureds were entitled to refunds in respect of unearned premiums. Prior to July 5, 1960, these "Escrow Deposits" had accumulated to an amount in excess of $125,-000.00. On that date, said General Agents, as directed by Equity's President, obtained from the North Carolina National Bank five certificates of deposit, payable to the order of Equity, representing $125,000.00 of said "Escrow Deposits." These were forwarded by said General Agents to Equity in reliance upon the false and fraudulent representations of Equity's President that Equity would not withdraw any of these funds or assign the certificates of deposit. Equity's policies of liability insurance were cancelled. The "Escrow Deposits," represented by the certificates of deposit, were impressed with a trust in favor of Equity's policyholders whose (advanced) estimated premiums had created the fund. Equity transferred Certificates Nos. 4 and 5 to the Brighton Bank and transferred Certificates Nos. 1, 2 and 3 to the Denver Bank. These transfers were made within four months prior to the receivership. G.S. 58-155.26. ". . . the officers and employees of the said banks knew or should have known that the Certificates of Deposit were procured and removed from the State of North Carolina by fraudulent misrepresentations of the aforementioned officers of Equity General Insurance Company and that the transfer of the Certificates of Deposit to the American National Bank at Denver, Colorado, and the First Bank of Brighton, at Brighton, Colorado, constituted a voidable transfer."

The order entered March 11, 1961, was as follows: "IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Order of this Court temporarily restraining North Carolina National Bank at Burlington, N. C. from paying out the $125,000 on deposit in the name of Equity General Insurance Company and represented by five outstanding Certificates of Deposit issued by said bank be, and the same is hereby continued in full force and effect pending a final determination at this Court as to the rightful owners of said funds; that T. B. Jones Insurance Service, Inc., and Seaboard Underwriters, Inc., with the consent of counsel for the Ancillary Re-

ceiver, be and the same are hereby made parties defendant in this action."

The Brighton Bank and the Denver Bank excepted to designated portions of Judge Bickett's findings of fact and order "(t)o the extent that such findings of fact and conclusions of law . . . relate to the jurisdiction of the Court over The First Bank of Brighton, Brighton, Colorado, or over the American National Bank of Denver, Denver, Colorado, or over the certificates of deposit held by said banks, or either of them, or to the jurisdiction of the Court to continue the restraining order herein, and solely to that extent, The First Bank of Brighton and the American National Bank of Denver, each appearing specially, solely and only for the purpose of challenging the jurisdiction of the Court."

The following appears in the record: "To the entry of the foregoing order The First Bank of Brighton, Brighton, Colorado and American National Bank of Denver, Denver, Colorado, each appearing specially, solely and only for the purpose of challenging the jurisdiction of the Court excepts and appeals to the Supreme Court of North Carolina. Notice of appeal given in open Court. Further notice waived."

North Carolina National Bank did not appeal.

*Attorney General Bruton and Assistant Attorney General Pullen for petitioner, appellee.*

*Cooper & Cooper for intervenors, appellees.*

*Ruark, Young, Moore & Henderson for First Bank of Brighton, appellant.*

*Smith, Leach, Anderson & Dorsett for American National Bank of Denver, appellant.*

BOBBITT, J.   Only a "party aggrieved" may appeal from the superior court to the Supreme Court. G.S. 1-271; *Langley v. Gore*, 242 N.C. 302, 87 S.E. 2d 519. "(A) 'party aggrieved' is one whose right has been directly and injuriously affected by the action of the court." McIntosh, North Carolina Practice and Procedure, § 675; *Freeman v. Thompson*, 216 N.C. 484, 5 S.E. 2d 434; *In re Application for Reassignment*, 247 N.C. 413, 421, 101 S.E. 2d 359. "An appeal may be taken from every judicial order or determination of a judge of a superior court, upon or involving a matter of law or legal inference, . . . which affects a substantial right claimed in any action or proceeding . . ." G.S. 1-277; *Veazey v. Durham*, 231 N.C. 357, 57 S.E. 2d 377; *Buick Co. v. General Motors Corp.*, 251 N.C. 201, 110 S.E. 2d 870.

"A special appearance by *a defendant* is for the purpose of testing

the jurisdiction of the court over his person." (Our italics) *In re Blalock*, 233 N.C. 493, 503, 64 S.E. 2d 848, and cases cited; McIntosh, North Carolina Practice and Procedure, § 328.

The Colorado banks are not named as parties to this action. No attempt has been made to serve process upon them. Judge Bickett found as a fact they had not been served with process. Moreover, Judge Bickett's order contains this provision: ". . . and the Court being of the opinion that it does not have jurisdiction over the American National Bank of Denver, Colorado, or the First Bank of Brighton, Brighton, Colorado, or over any property within the possession of said banks, . . ."

Appellants rely largely on *First Nat. Bank of Rome v. First Nat. Bank of Jasper* (C.C.A. 5th), 264 F. 83, affirmed by the United States Supreme Court in *Bank of Jasper v. First Nat. Bank*, 258 U.S. 112, 42 S. Ct. 202, 66 L. Ed. 490. But consideration of these decisions illustrates the fallacy of appellants' position.

In the cited case, the action was instituted by the (Rome) Georgia bank against the (Jasper) Florida bank in the United States District Court in Florida to recover as owner and holder of certificates of deposit issued by the Florida bank. The Florida bank pleaded as *res judicata* decrees previously entered in a Florida State Court. Under these decrees, the Florida bank was required to pay the funds represented by these certificates of deposit to Florida claimants, plaintiffs in an equity suit. The Georgia bank, also two other Georgia corporations, were named as defendants in said Florida equity suit. The purported service of process on these Georgia corporations was by publication. It was held the Georgia bank was not barred by the decrees in the prior Florida equity suit. The ground of decision was that the service of process by publication was insufficient to confer jurisdiction. The opinion of *Mr. Justice Brandeis* (258 U.S. 112) concludes:

> ". . . Such certificates are merely promissory notes of the Jasper bank, payable like unsecured notes of individuals, out of general assets. Like other notes they are negotiable and are payable only upon surrender of the instrument properly endorsed. There is not even an allegation either that the transfer to the First National Bank (of Rome) had been made after maturity of the certificates or that the endorsee took them with notice of the fraud.
>
> "As neither the certificates of deposit nor the holder thereof were within the State of Florida, its courts could not—in the absence of consent—acquire jurisdiction to determine the liability of maker to holder."

The decision, in gist, was this: The Georgia bank, named as defendant in the Florida equity suit, had no property in Florida affording the basis for service of summons by publication, Hence, as to the Georgia bank, the decrees in the Florida equity suit were void for lack of jurisdiction and did not constitute *res judicata.*

Here, no contention is made by the Ancillary Receiver or by the intervenor that the deposit in the North Carolina National Bank constitutes property in this State owned by the Colorado banks affording a basis for service of process upon them by publication.

Appellants are not parties or named as parties to this action. The order from which they attempt to appeal declares they have not been served with process and disavows any attempt to exercise jurisdiction over them. In short, the exceptions and assignments of error on this purported appeal are presented by strangers to the action. Appellants' appearance was and is "specially, solely and only for the purpose of challenging the jurisdiction of the Court," notwithstanding the court has not asserted or attempted to assert jurisdiction over them. Their position is anomalous and untenable.

In the superior court, appellants filed no affidavit, made no motion and asserted no rights. They presented nothing that invoked a ruling by the court as to them. Their counsel, orally, simply challenged or questioned the jurisdiction of the court.

Unless and until appellants are made or voluntarily become parties to this action, they are not bound by orders and decrees entered herein. If appellants are entitled to recover on said certificates of deposit from the North Carolina National Bank, adequate procedural remedies are available. As of now, nothing appears to show they are "aggrieved" by Judge Bickett's order within the meaning of G.S. 1-271. Hence, appellants' purported appeal is dismissed.

It is noted: The North Carolina National Bank did not appeal from Judge Bickett's order. However, no order has been made purporting to adjudicate the ownership of the $125,000.00 represented by said certificates of deposit or requiring the North Carolina National Bank to make payment thereof, in whole or in part, to anybody.

Appeal dismissed.