In the Matter of Anthony V. BOUZA, individually and in his capacity as Chief of Police of the City of Minneapolis, Minnesota, Relator,

v.

Hugh GALLAGHER, et al., individually and as members of the Minneapolis Civil Service Commission, Bruce Lindberg, individually and in his capacity as President of the Minneapolis Police Officers Federation, Respondents.

No. C1-87-1147.

Court of Appeals of Minnesota.

Dec. 1, 1987.

Review Denied Feb. 12, 1988.

Robert J. Alfton, Minneapolis City Atty., Michael T. Norton, Asst. City Atty., Minneapolis, for Anthony V. Bouza, relator.

Timothy M. Regan, Minneapolis, for Hugh Gallagher, respondent.

Roger A. Peterson, Minneapolis, for Bruce Lindberg, respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Relator Minneapolis Police Chief Anthony Bouza appeals from two decisions of the Minneapolis Civil Service Commission which determined police inspectors are classified positions subject to the rules and regulations of the Commission. Bouza contends the Commission's decision was arbitrary and capricious, not supported by substantial evidence, and based on an erroneous theory of law. Bouza also contends the Commission exceeded its authority and that the Public Employees Labor Relations Act preempts the jurisdiction of the Commission. We reverse.

## FACTS

Police inspectors in Minneapolis are high-ranking administrative/managerial positions. Inspectors are one rank below deputy chief, but one rank above police captain. In May 1986, Minneapolis Police Chief Anthony Bouza issued an order which revised the duties of police inspectors to include precinct command and subsequently assigned an inspector to command the fifth precinct. According to the job classifications of the Minneapolis Civil Service Commission (Commission), only police captains may command a precinct. The Minneapolis Police Officers Federation (Federation) filed a formal protest with the Commission challenging the duty revision and personnel assignment.

The Commission held a hearing and received testimony from Bouza, two police captains, and a former Chief of Police. The Commission decided by a 2 to 1 vote that police inspectors are in the classified service and subject to all civil service rules and regulations, except the rules relating to appointment and removal. The Commission consequently determined inspectors may not command a precinct.

Bouza requested a rehearing and asked the Commission to consider a recently-discovered petition which was dated January 3, 1961, and signed by Carl Johnson and H. Bud Hawkins, past presidents of the Police Officers Federation and Firefighters Local 72. The petition requested that several positions in the police and fire departments, including police inspector, be placed in the unclassified service. At that time, police inspector positions could be placed in the unclassified service either by amendment of the city charter or by legislative act.

On January 13, 1961, the city council adopted a resolution directed to the city's legislative delegation recommending that Minneapolis police inspectors be placed in the unclassified service. The resolution resulted from the union's January 1961 petition. The legislature enacted the following act:

An act relating to the assignment of employees within the police department of the city of Minneapolis.

\*   \*   \*   \*   \*   \*

Section 1. **Minneapolis, police department, employee appointments.** Notwithstanding any provisions of the Minneapolis city charter, veterans' preference, or civil service law, rule, or regulation to the contrary, the superintendent of police of the city of Minneapolis may appoint the inspector of police, the deputy inspectors of police, the inspector of detectives, the head of the morals squad, and the license inspector, such personnel to be appointed from among the members of the Minneapolis police department holding at least the rank of patrolman.

Sec. 2. **Superintendent to appoint and discharge.** Such positions may be

filled by the superintendent of police without examination and such appointees may be removed by him at will.

Sec. 3. **Civil service status.** A member of the police department accepting such appointment shall retain his civil service status and seniority, and time served in such appointive position shall be credited in computing his seniority in the permanent civil service classification held by him immediately prior to accepting such appointive position.

Upon removal from such appointive position he shall be returned to his permanent civil service classification.

If no vacancy is available in his permanent civil service classified position, seniority shall prevail and the person most recently certified to such position shall be returned to the permanent civil service classification held by him prior to such certification.

1961 Minn.Laws ch. 108. Chapter 108 was amended eight years later. The superintendent of police was redesignated chief of police and given authority to appoint three deputy chiefs of police, five inspectors of police, and other personnel. *See* 1969 Minn.Laws ch. 604, § 1.

The Commission held a second hearing on June 11, 1987 at which it heard testimony from the Minneapolis Fire Chief, Harmon Ogdahl, a city council member in 1961 and state senator from 1963 to 1980 and Richard Nelson, vice president of the Federation in 1961. Ogdahl testified about the city council's intent in requesting the 1961 legislation and the legislature's intent in enacting Chapter 108. Nelson testified about discussions he had as Federation president prior to the 1969 amendments.

On June 12, 1987, the Commission affirmed its earlier decision by a 3 to 0 vote. Bouza challenges the Commission's decisions by writ of certiorari.

## ISSUE

Was the position of inspector of police removed from the classified service of the City of Minneapolis by 1961 Minn.Laws ch. 108?

## ANALYSIS

■ A reviewing court will defer to an administrative agency when the agency is performing its function as a factfinder. *See State ex rel. Jenson v. Civil Service Commission of Minneapolis,* 268 Minn. 536, 538, 130 N.W.2d 143, 146 (1964), *cert. denied,* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965). However, when an administrative agency's conclusions are "based on legal rather than factual considerations, the reviewing court is not bound by the decision of the agency and need not defer to agency expertise." *No Power Line, Inc. v. Minnesota Environmental Quality Council,* 262 N.W.2d 312, 320 (Minn.1977). Since the facts of this case are uncontested and the parties dispute only the Commission's jurisdiction and its interpretation of the law, we will independently review the evidence and come to our own conclusions. *See id.*

### Civil Service Status

The Minneapolis City Charter states that all city employees are in the classified service unless specifically excluded. *See* Charter of the City of Minneapolis, ch. 19, § 4 (as amended July 27, 1972). Positions in the unclassified service are not "subject to examination or affected as to their selection, appointment, discharge or removal." *Id.* Positions may be added to the unclassified service only by referendum or by special law. *See* Minn.Const. art. XI, §§ 2, 4 (1958). Bouza contends police inspectors were placed in the unclassified service by 1961 Minn.Laws ch. 108 and cites section 3 of that act which addresses "civil service status."

A member of the police department accepting such appointment shall retain his civil service status and seniority, and time served in such appointive position shall be credited in computing his seniority in the permanent civil service classification held by him immediately prior to accepting such appointment.

Upon removal from such appointive position he shall be returned to his permanent civil service classification.

If no vacancy is available in his permanent civil service classified position, seniority shall prevail and the person most recently certified to such position shall be returned to the permanent civil service classification held by him prior to such certification.

1961 Minn.Laws ch. 108, § 3.

■■■ The Commission concluded police inspectors are subject to civil service regulations, except for appointment and removal, and cites civil service documents which refer to inspectors as "classified positions" whose appointments are "not subject to competitive examinations." We note that administrative interpretations of legislative acts should be considered. *See Beck v. Groe*, 245 Minn. 28, 43, 70 N.W.2d 886, 897 (1955). However, administrative interpretations are not binding on courts and may be disregarded if "found to be erroneous and in conflict with the expressed purpose of the statute and the intention of the legislature." *Id.*

> The intent of the legislature is not to be defeated by placing a narrow or technical construction upon words if the context and the purpose of the statute as a whole indicate that they were used in a popular sense with a broader meaning. Where the words are not explicit, the object of the statute, the mischief to be remedied, and the consequences of a particular interpretation may be considered in ascertaining legislative intent.

*Governmental Research Bureau, Inc. v. Borgen*, 224 Minn. 313, 322, 28 N.W.2d 760, 765 (1947). *See* Minn.Stat. § 645.16 (1986). We conclude the Commission's interpretation of Chapter 108 is contrary to the expressed purpose of the act and the intention of the legislature.

Chapter 108 as amended vests the chief of police with authority to make a limited number of discretionary appointments to high-level managerial positions within the department. The act obviously is designed to allow the chief of police to appoint administrative personnel who are accountable to the police chief for the implementation of departmental policy and to remove such personnel for nonperformance. However, we believe the act's application is broader than mere appointment and removal as argued by the Commission. There must be concomitant authority to assign specified duties to appointive personnel consistent with their positions in order that the chief of police, charged with the responsibility of operating a police department, can fully utilize his supervisory staff. The language of the act supports this conclusion.

Seniority benefits for city employees occupying classified positions are protected under current civil service rules; they also were protected under the civil service rules existing in 1961. We can discern no reason why the legislature would preserve civil service status and seniority for police inspectors unless the legislature also intended that persons assuming these appointive positions would be removed from the classified service. *See* 1961 Minn.Laws ch. 108, § 3 ("A member of the police department accepting such appointment shall retain his civil service status and seniority"). The "return" privileges provided by Chapter 108 make no sense if the appointee already is in the classified service. *See id.* ("upon removal from such appointive position he shall be returned to his permanent civil service classification").

The legislative history, beginning with the 1961 request of both the Federation and Firefighter Local 72 to place police inspector in the "unclassified service," the subsequent resolution of the city council approving that placement, and the responsive enactment of Chapter 108 all indicate a legislative intent that police inspectors are in the unclassified service.[1]

---

1. The Commission heard and considered testimony from a former legislator and council member who testified about the city council's intent in requesting the 1961 legislation and the legislature's intent in enacting Chapter 108. We are reluctant to consider this testimony. *See Washington County v. AFSCME, Council No. 91,*

262 N.W.2d 163, 167 (Minn.1978) ("the affidavits of individual legislators are not competent to impeach the text of the enrolled bill"); *In re State Farm Mutual Automobile Insurance Co.,* 392 N.W.2d 558, 569 (Minn.Ct.App.1986) ("[post-session] testimony by individual legislators regarding the legislative intent is inadmissible in

### Duty Assignments

■ It is true that, despite the unclassified status of police inspectors, the labor agreement between the Federation and the City of Minneapolis recognizes the Federation as the exclusive representative for certified employees, including "Inspector of Police." The agreement states that duty assignments by the police department must be consistent with civil service job classifications, and that "[d]isputes which may arise over alleged 'working out of class' violations * * * shall be submitted by the Federation to the Minneapolis Civil Service Commission for resolution." However, that same agreement between the Federation and the city unequivocally states: "Nothing herein shall be construed as a limitation upon the Employer's managerial prerogatives including the right to modify the Table of Organization (i.e., its organizational structure) * * * ." The job description for police inspectors identifies their general responsibilities: "Under direction to do highly difficult and complex administrative work supervising all divisions of the Police Department; and to do related work as required." Typical duties include precinct and division inspection, officer assignments, allocation of police personnel subject to the approval of the chief of police, and enforcement of all laws and ordinances. Precinct command appears to be a duty assignment consistent with the job description for police inspectors. The assignment of a police inspector to command a precinct is certainly contained in the chief of police's right to exercise managerial prerogatives.

Finally, as a practical matter, it requires no exceptional elasticity of reasoning to conclude that inspectors' supervisory job duties as "chief administrative assistant[s] to the [chief] of police" mandates that their supervisor, the chief, determine exactly what their duties shall be, including precinct commands. Leaving these assignments in the hands of the Commission rather than those of Chief Bouza would lead to an absurdity clearly not intended by the

construing a statute"); see also Starkweather v. Blair, 245 Minn. 371, 379–80, 71 N.W.2d 869, 875–76 (1955) ("the motives of the legislative

legislature. See Minn.Stat. § 645.17(1) (1986).

### DECISION

The Commission erred by concluding police inspectors are classified positions subject to civil service rules, except appointment and removal, and by determining the chief of police may not assign inspectors to precinct commands.

Reversed.

FORSBERG, J., dissents.

FORSBERG, Judge, dissenting:

I respectfully dissent. As the majority correctly points out, all employees of the City of Minneapolis are in the classified service unless specifically excluded. I am unable to agree that Chapter 108 specifically excluded Inspectors of Police from the classified service.

Prior to the enactment of Chapter 108, the position of Inspector was filled by appointment of the chief of police, subject to approval by the Civil Service Commission. Chapter 108 removed only the requirement of Commission approval.

The majority concludes that the "return" privilege of Chapter 108 would be unnecessary for an individual already in the classified service. In my opinion, the "return" privilege was merely precautionary. The position of Inspector is a hybrid: subject to all Civil Service Commission rules, but not subject to competitive testing, as are all other civil service jobs. The "return" privilege merely guarantees that an individual accepting the temporary classification of Inspector will not risk forfeiting his or her permanent classification. This interpretation is bolstered by the language of section 3 allowing time spent in the temporary classification of Inspector to be credited to that person's permanent classification.

If the legislature had intended to place Inspectors of Police in the unclassified service, it would have done so in unambiguous

body in enacting any particular legislation are not the proper subject of judicial inquiry").

language. The subsequent history of Chapter 108 shows that the legislature did not do so. In 1969 the legislature amended Chapter 108. 1969 Minn.Laws ch. 604. One day after Chapter 604 was enacted,

Chapter 604—S.F. No. 2248 [Adopted May 23, 1969]

An act relating to the Minneapolis police department, providing for title of chief and for certain employee appointments; amending Laws 1961, Chapter 108, Sections 1 and 2.

Be it enacted by the Legislature of the State of Minnesota:

Section 1. Laws 1961, Chapter 108, Section 1 is amended to read:

Sec. 1 **Minneapolis, city of; police department.** Notwithstanding any provisions of the Minneapolis city charter, veterans' preference, or civil service law, rule, or regulation to the contrary, the superintendent of police of the city of Minneapolis shall after the effective date of this act have the title and be designated as the chief of police of the city of Minneapolis and may appoint three deputy chiefs of police, five inspectors of police, the supervisor of the morals and narcotics section, and the supervisor of license inspection, such personnel to be appointed from among the members of the Minneapolis police department holding at least the rank of patrolman. (emphasis added)

the legislature placed certain employees in the city coordinator's office in the unclassified service. 1969 Minn.Laws ch. 690. The two enactments, placed side by side, show the following:

Chapter 690—S.F. No. 2060 [Adopted May 24, 1969]

An act providing for certain positions in the city coordinator's department of the city of Minneapolis to be in the unclassified service.

Be it enacted by the Legislature of the State of Minnesota:

Section 1. **Minneapolis, city of; coordinator's department; employees.** Notwithstanding any provisions of the Minneapolis city charter, veterans preference act, or civil service rule, law or regulation to the contrary, the city coordinator of the city of Minneapolis may appoint any suitable persons to serve in the coordinator's department of said city under the direction of the city coordinator as assistant coordinator for administrator services, director of planning and development, director of environmental control and director of human resources and may designate such positions by such titles as it shall determine. Any person presently holding or who shall be hereafter appointed to any such position shall be in the unclassified service of the city and shall serve at the pleasure of the city coordinator. Persons holding the positions shall be entitled to the same employee benefits as persons in the classified service. (emphasis added)

---

These two laws, passed within a day of each other, relate to the same subject matter; one unambiguously places certain employees in the unclassified service, while the other does not.

In 1966, the Commission enacted Rule 3.01, which stated:

The following positions are in the classified service but are filled, pursuant to Minnesota Statutes 1961, Chapter 108, through appointments by the Superintendent of Police from members of the police service: Police Inspector, Deputy Police Inspector, Detective Inspector, License Inspector and Head of Morals Squad.

Mpls. Civil Serv. Com'n Rule 3.01 (1966). Rule 3.01 was amended in 1976 to read:

Rule 3.01 **CLASSIFIED AND UNCLASSIFIED SERVICES.**

\*　　\*　　\*　　\*　　\*　　\*

B. **Classified positions**—Appointments Not Subject to Competitive Examinations.

\*　　\*　　\*　　\*　　\*　　\*

2. positions filled by appointment by the Superintendent of Police from members of the Police service: Police Inspector; Deputy Police Inspector; Detective Inspector; License Inspector; Head of

Morals Squad—Laws of 1961, Chapter 108.

Mpls. Civil Serv. Com'n Rule 3.01 (1976).

Thus, for 21 years, the Commission has treated the Inspector position as classified, but not subject to competitive examinations. The 1976 version of Rule 3.01 is not different in substance from the 1966 version. Under these circumstances, the legislature's action in 1969 reenacting Chapter 108 without specifying that Inspectors are in the unclassified service is particularly persuasive evidence that Inspectors were not removed from the classified service in either 1961 or 1969.

> Reenactment of a statutory provision without change in the face of a consistent administrative construction is persuasive of a *legislative recognition and approval* of such construction.

*In re Cold Spring Granite Co.,* 271 Minn. 460, 469, 136 N.W.2d 782, 788 (1965) (emphasis added). In light of the legislature's reenactment without change of Chapter 108 three years after Rule 3.01 was promulgated, I would conclude that the legislature approved of the language of the Rule.

Furthermore, the Minnesota Supreme Court has stated that:

> [s]tatutes relating to the same general subject matter are in pari materia and are to be construed together, because presumably they were enacted in accord with the same general legislative policy and were intended to be a harmonious and uniform system of law.

*State ex rel. Interstate Air–Parts, Inc. v. Minneapolis/St. Paul Metropolitan Airport Commission,* 223 Minn. 175, 183–84, 25 N.W.2d 718, 724 (1947).

Applying this doctrine to the statutes in question, it is clear that the legislature knew how to put employees unambiguously in the unclassified service, and equally clear that it did not do so in the case of Chapter 108. Bouza argues that Chapter 108 is ambiguous because it does not specifically state whether Police Inspectors are classified or unclassified. Under the Minneapolis Charter, however, all employees are classified unless specifically excluded. Failure to state that a particular position is not specifically excluded every time the legislature mentions the position should not result in its becoming unclassified.

The original petition from Carl Johnson and H. Bud Hawkins to the Minneapolis City Council asked that Police Inspectors be placed in the unclassified service. Minutes of the City Council regarding the city's proposal also indicate the city asked the legislature to place these positions in the unclassified service. Chapter 108 makes no mention of the unclassified service. Minutes of the City Council from after Chapter 108 were passed, relating to the required city approval before Chapter 108 could take effect, make no mention of the unclassified service; rather, the resolution of approval stated:

> Resolved by the City Council of the City of Minneapolis:

> That, whereas the Legislature of the State of Minnesota has passed a law providing for *assignment of employees within the Police Department of the City of Minneapolis,* said law being Chapter 108 of the Laws for 1961 * * *.

(Emphasis added.)

These minutes of the City Council are strong evidence that the city asked for legislation placing Police Inspectors in the unclassified service, but the legislature refused to do what the city wanted.

In addition to interpretation of Chapter 108, it is clear that the collective bargaining agreement between the city and the Federation gives the Commission jurisdiction over Inspectors of Police. Under the Public Employees Labor Relations Act, Minn.Stat. § 179A.07, subd. 2 (1984), the provisions of the agreement supersede the Civil Service Commission rules found in the Minneapolis City Charter. Section 1.2 of the agreement provides:

> Section 1.2 Duty assignments shall be made by the Department which are consistent with Minneapolis civil service job classifications. Disputes which may arise over alleged 'working out of class' violations (i.e. violations of Minneapolis Civil Service Commission Rule No. 3.07), *shall be submitted by the Federation to*

*the Minneapolis Civil Service Commission for resolution.*

(Emphasis added.) Under Section 1.2, the Commission has jurisdiction to settle this dispute over an allegation that Inspectors of Police were working out of class in commanding a precinct. The contract clearly strengthens the decision of the Civil Service Commission that it had jurisdiction over Inspectors.

Finally, the majority questions the wisdom of allowing Chief Bouza to appoint Inspectors but not allowing him to determine what their duties will be. That is a decision for the legislature, not this court, to make. *Norris Grain Co. v. Nordaas,* 232 Minn. 91, 109–10, 46 N.W.2d 94, 105 (1951).