**In the Matter of CITY OF WHITE BEAR LAKE'S REQUEST FOR AN ELECTRIC UTILITY SERVICE AREA CHANGE WITHIN ITS CITY LIMITS.**

**In the Matter of the Petition of NORTHERN STATES POWER COMPANY FOR AN ELECTRIC UTILITY SERVICE AREA CHANGE WITHIN THE CITY OF WHITE BEAR LAKE.**

No. C4-89-59.

Court of Appeals of Minnesota.

July 25, 1989.
Review Denied Sept. 21, 1989.

Roger A. Jensen, Peterson, Bell, Converse & Jensen, St. Paul, for petitioners.

Hubert H. Humphrey, III, Atty. Gen., Jon E. Kingstad, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and SHORT and SCHULTZ,* JJ., without oral argument.

## OPINION

SHORT, Judge.

The City of White Bear Lake (City) petitioned the Minnesota Public Utility Commission (MPUC) to allow Northern States Power Company (NSP) to serve a commercially developing area of the City presently served by Anoka Electric Cooperative (Anoka). The MPUC denied the petition, and the City petitioned this court for a writ of certiorari. We reverse and remand this matter to the MPUC for further consideration.

## FACTS

In 1974, the Minnesota legislature enacted the Public Utilities Act. The Act sought to regulate electric public utilities in order to provide consumers with reliable service at reasonable rates. Minn.Stat. § 216B.01 (1988). The Act established assigned service areas for utility providers "in order to * * * promote economical, efficient, and adequate electric service to the public * * *." Minn.Stat. § 216B.37 (1988).

The legislature specified procedures for determining the boundaries of the assigned service areas. Where two or more electric utilities serve a single municipality, "the commission may require each utility to file * * * a map showing its electric lines within the municipality." Minn.Stat. § 216B.39, subd. 1 (1988).

At the time the Act was passed, both NSP and Anoka were serving the municipality of White Bear Lake. NSP was serving a portion of the City pursuant to a 20 year franchise agreement signed by the City and NSP in February 1955. The agreement was still in effect in 1974. Ano-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ka had been serving residents of White Bear Lake since the late 1940s. Because the City was served by the two utilities, NSP and Anoka were asked to submit a map showing the portions of the City each of them served. The utilities did so, and, in an order issued April 7, 1975, the MPUC drew the assigned service area boundaries for NSP and Anoka in accordance with the areas then being served by the respective utilities, as indicated by the map. In 1978, NSP signed another 20 year franchise agreement with the City, which remains in effect today. Anoka has never had a franchise agreement with the City.

In February of 1988, the City petitioned the MPUC for a change in the assigned service areas of the two utilities. The City sought to transfer from Anoka to NSP an area that is being commercially developed. Approximately one-third of this area falls within Anoka's service region, although Anoka currently is serving only 15–20 residential customers within this area. The rest of the area is not yet developed. The basis for the City's request is that the development would be simplified if the City could work with only one utility. The City chose NSP because NSP already is serving 98 percent of the municipality. NSP joined in the City's petition, requesting that the MPUC vacate and amend its 1975 order to accommodate the City's wishes. NSP also separately petitioned the MPUC, requesting that Anoka's entire service area in the City be assigned to it.

On September 22, the MPUC granted the City's petition, but denied NSP's request that it be the exclusive utilities provider for the City. Anoka filed a petition for reconsideration and rehearing. The MPUC then issued a second order vacating its September 22 order and denying the City's petition. The basis for the vacation was that the original assigned service areas were determined by a map drawn by NSP and Anoka and approved by the MPUC. The MPUC then denied the City's motion to vacate the second order. The City petitioned this court for a writ of certiorari. The writ issued, and this appeal follows.

## ISSUE

May the MPUC alter the service area boundaries of utility providers within a municipality if doing so would provide more efficient, reliable and cost-effective service or would otherwise serve the public interest?

## ANALYSIS

The City does not dispute that both NSP and Anoka jointly filed a map showing service area boundaries in 1975, or that the MPUC approved those boundaries. However, the City argues that the boundaries reflected by the map are not valid because (a) Minn.Stat. § 216B.39, subd. 5 (1988) gives priority to utilities with franchise agreements, and (b) the City is not bound by a contract to which it was not a party. Where the issues before us involve legal rather than factual considerations, our review is *de novo*. *No Power Line, Inc. v. Minnesota Environmental Quality Council*, 262 N.W.2d 312, 320 (Minn.1977); *Bouza v. Gallagher*, 416 N.W.2d 126, 128 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988).

The Public Utilities Act was enacted "to provide the retail consumers of natural gas and electric service in this state with adequate and reliable services at reasonable rates * * * to avoid unnecessary duplication of facilities which increase the cost of service to the consumer and to minimize disputes between public utilities * * *." Minn.Stat. § 216B.01 (1988). The legislature, to achieve this purpose, mandated assigned service areas for utilities "in order to encourage the development of coordinated statewide electric service * * * and to promote economical, efficient, and adequate electric service to the public * * *." Minn.Stat. § 216B.37 (1988).

To guide the MPUC in establishing service areas, the legislature established a priority for assigning service areas where more than one utility served the same municipality. Minn.Stat. § 216B.39, subd. 5 (1988) provides in relevant part:

Where two or more electric utilities provide electric service in a municipality on April 12, 1974, the boundaries of the

assigned service areas shall conform to those contained in municipal franchises with the electric utilities on April 12, 1974. In the absence of a franchise, the boundaries of the assigned service areas within an incorporated municipality shall be a line equidistant between the electric lines of the electric utilities as they exist on April 12, 1974; provided that these boundaries may be modified by the commission to take account of * * * the contracts provided for in subdivision 4.

The City claims the MPUC erred in 1975 when it divided electric service between Anoka and NSP pursuant to the boundary map signed by the two utilities. The City argues that since NSP was the sole franchised electric utility in 1974, NSP should have been assigned the electric service for the entire City.

■ We cannot agree that the MPUC erred in 1975 when it assigned the utilities' respective service areas according to the utilities' agreement. The language in the statute requiring that the boundaries of the assigned service areas conform to those contained in municipal franchises contemplates a situation where each of the utilities is serving the municipality pursuant to a franchise. Where, as here, two utilities were serving the City but only one was franchised, the MPUC properly required the utilities to submit a boundary map, and properly divided the municipality between the utilities pursuant to their jointly filed map.

■ The MPUC's second decision vacating its September 22 order, however, is not consistent with the purpose or intended operation of the Public Utilities Act. Although the MPUC acknowledges in its second order that assigned service areas can be changed to accomodate public need, the MPUC essentially holds that boundaries drawn in 1974 cannot be altered absent extraordinary circumstances. The MPUC stated that its decision was "reached with some reluctance" and that it "appreciates the practical difficulties facing communities engaged in economic development." The agency also recognized "the expertise of municipalities in local energy matters."

The MPUC nonetheless held that despite the practical advantages and public benefits that would result from reassigning the commercially developing area to NSP, the utilities were required to adhere to their original boundaries.

■ We think the Public Utilities Act allows for greater flexibility in the reassignment of service areas than is recognized by the MPUC. The MPUC may at any time rescind, alter or amend any order, and may reopen any case at any time after the issuance of its original order. Minn. Stat. § 216B.25 (1988). The MPUC therefore is empowered to reopen these proceedings and to consider evidence presented by the parties supporting and opposing the petition. The burden is on the petitioner to show that the requested modification is in the public interest. To meet its burden, the petitioner must at least show that modifying the service area boundaries will "encourage the development of coordinated statewide electric service," "avoid unnecessary duplication of electric utility facilities," or promote the delivery of more efficient and cost-effective electric service. *See* Minn.Stat. § 216B.37. Other factors indicative of public policy, such as the criteria listed in Minn.Stat. § 216B.42 (1988), may also be relevant. The MPUC therefore is reversed as to its denial of the City's petition.

We have not reinstated the MPUC's September 22 order granting the petition because the record does not indicate whether the original order is based on the MPUC's assessment of the public interest or upon the erroneous assumption that NSP is entitled to expand its service area merely because it is the only franchised utility. We therefore remand this case to the MPUC for clarification of its original order, and, if necessary, for further proceedings consistent with this decision.

## DECISION

The MPUC may alter the service area boundaries of public utilities providing electric service within a municipality if doing so would provide more efficient, reliable and

cost-effective service or would otherwise serve the public interest.

Reversed and remanded.